Case No. 16-2896

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————

JOAN MULLIN, Administratrix of the Estate of Robert Mullin, deceased
and Joan Mullin, individually,

Appellants,

v.

ADMINISTRATOR KAREN BALICKI; ROBERT PATERSON; DIRECTOR
MARIE DUNLAP-PRYCE; JANE BYRD, LPN; ERIN MARUSKY, R.N.;
OFFICER DIMLER; NURSE BEATRICE TEEL; KINTOCK GROUP;
COUNTY OF MERCER; JOHN DOES 4-10,

Appellees.

———————

On Appeal From Judgments Entered in the United States District Court for the
District of New Jersey, by the Hon. MARY L. COOPER, U.S.D.J., and the Hon.
LOIS H. GOODMAN, U.S.M.J.
Case No. 11-247

———————

## BRIEF ON BEHALF OF DEFENDANT-APPELLEE OFFICER DIMLER

———————

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for Appellees*
By:   Gregory R. Bueno
     Deputy Attorney General
     (609) 633-8687
     gregory.bueno@dol.lps.state.nj.us

Lisa A. Puglisi
  Assistant Attorney General
  Of Counsel

# TABLE OF CONTENTS

Page

RELATED CASES AND PROCEEDINGS.............................................................1

COUNTERSTATEMENT OF THE CASE.............................................................1

Summary of Argument ......................................................................................12

ARGUMENT

    POINT I

        THE DECISION TO GRANT THE STATE
        DEFENDANTS' MOTION TO DISMISS THE SECOND
        AMENDED COMPLAINT SHOULD BE AFFIRMED
        BECAUSE THE FACTS AS PLEADED THEREIN
        WERE INSUFFICIENT TO ESTABLISH LIABILITY
        UNDER SECTION 1983, THE NEW JERSEY CIVIL
        RIGHTS ACT, AND STATE COMMON LAW................................14

        A. Standard of Review .......................................................................14

        B. The Decision to Grant the Motion to Dismiss Was
           Proper and Should be Affirmed. .................................................14

           1. The Plaintiffs' Federal and State Constitutional
              Claims Pursuant to 42 U.S.C. § 1983 and the
              NJCRA..................................................................................14

           2. The State Law Tort Claims ....................................................18

    POINT II

        THE DISTRICT COURT'S DENIAL OF PLAINTIFFS'
        MOTION FOR RECONSIDERATION SHOULD BE
        AFFIRMED BECAUSE THE DECISION WAS AMPLY
        SUPPORTED BY THE RECORD, DID NOT

CONSTITUTE AN ABUSE OF DISCRETION, AND DID
NOT RESULT FROM LEGAL ERROR..............................................20

A.  Standard of Review ......................................................................20

B.  The Plaintiffs Did Not Offer the Legal or Evidentiary
    Support Necessary to Justify the Extraordinary Relief of
    an Order Reconsidering a Prior Decision of the District
    Court. ............................................................................................21

## POINT III

THE ORDER DENYING THE PLAINTIFFS' MOTION
FOR LEAVE TO AMEND THE COMPLAINT SHOULD
BE AFFIRMED BECAUSE THE PLAINTIFFS RAISED
THOSE AMENDMENTS WITH UNDUE DELAY..........................25

A.  Standard of Review ......................................................................25

B.  Granting Plaintiff Leave to File a Third Amended
    Complaint Would Have Unduly Delayed the Final
    Disposition of This Matter ...........................................................25

    a.  April 2013 Discovery .............................................................27

    b.  July 2013 Discovery ...............................................................28

    c.  Judicial Economy....................................................................29

    d.  Plaintiffs' Argument That the Allegations in the
        Proposed TAC Related Back to the Prior Pleadings
        Was Without Merit..................................................................30

    e.  Granting the Motion to Amend Would Have Unduly
        Prejudiced Defendant Dimler..................................................34

POINT IV

THE ORDER AFFIRMING JUDGE GOODMAN'S
ORDER DENYING THE MOTION TO AMEND
SHOULD BE AFFIRMED BECAUSE IN SO RULING,
JUDGE COOPER DID NOT ABUSE HER DISCRETION
OR COMMIT AN ERROR OF LAW. ..............................................36

A. Standard of Review .......................................................................36

B. Judge Cooper's Order Affirming Judge Goodman's
Denial of the Plaintiffs' Motion to Amend Should Be
Affirmed. ...................................................................................36

CONCLUSION ........................................................................................37

# TABLE OF AUTHORITIES

## Cases Cited

Adams v. Gould Inc., 739 F.2d 858 (3d Cir. 1984) ...................................................34

Alston v. Parker, 363 F.3d 229 (3d Cir. 2004) ........................................................17

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009)..................................................................14

Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989)........................................... 25, 33

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ....................................................14

Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008) ............................25

Blystone v. Horn, 664 F.3d 397 (3d Cir. 2011) .......................................................21

Charpentier v. Godsil, 937 F. 2d 859 (3d Cir. 1991)...............................................19

Colburn v. Upper Darby Twp., 946 F.2d 1017 (3d Cir. 1991)..................... 4, 15, 17

CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612 (3d Cir. 2013) ................26

Cureton v. NCAA, 252 F.3d 267 (3d Cir. 2001) ............................................. 26, 35

Damiano v. Sony Music Entm't, Inc., 975 F.Supp. 623 (D.N.J. 1997)...................21

Diersen v. Chicago Car Exch., 110 F.3d 481 (7th Cir. 1997) .................................26

Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594 (5th Cir. 1981) ...........................26

Fleisher v. Standard Ins. Co., 679 F.3d 116 (3d Cir. 2012)....................................14

Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153 (3d Cir. 2014)......................14

Foman v. Davis, 371 U.S. 178 (1962) .....................................................................25

Freedman v. City of Allentown, 853 F.3d 1111 (3d Cir. 1988) ..............................17

Garvin v. Cty. of Philadelphia, 354 F.3d 215 (3d Cir. 2003) ........................... 31, 32

Green v. Corzine, No. 09-1600, 2011 WL 735719, at *7 (D.N.J. Feb. 22, 2011) ..15

Greenway Dev. Co. v. Bor. of Paramus, 750 A.2d 764 (N.J. 2000) .......................19

Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162 (D.N.J. 1998)...................36

Humphreys v. Roche Biomed. Lab. Inc., 990 F.2d 1078 (8th Cir. 1993) ..............26

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) ..............25

Jackson v. Chubb Corp., 45 Fed.Appx. 163 (3d Cir. 2002) ...................................36

Jang v. Boston Sci. Scimed, Inc., 729 F.3d 357 (3d Cir. 2013) .............................26

Kounelis v. Sherrer, 529 F.Supp.2d 503 (D.N.J. 2008)...........................................36

Krupski v. Costa Crociere S.p.A., 560 U.S. 538 (2010).........................................31

Lesende v. Borrero, 752 F.3d 324 (3d Cir. 2014)....................................................21

Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir. 1993) ..................................... 25, 26, 36

Ludlow v. City of Clifton, 702 A.2d 506 (N.J. App. Div. 1997) .................... 19, 20

Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669 (3d Cir. 1999)...........................................................................................................20

Minter v. Prime Equip. Co., 451 F.3d 1196 (10th Cir. 2006) ................................34

N.L. Indus., Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513 (D.N.J. 1996) 21, 22, 24

Panna v. Firstrust Sav. Bank, 760 F.Supp. 432 (D.N.J. 1991) ...............................21

Perona v. Twp. of Mullica, 636 A.2d 535 (N.J. App. Div. 1994) ................... 19, 20

Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998)...........26

Singletary v. Pennsylvania Dep't of Corrs., 266 F.3d 186 (3d Cir. 2001)...............31

Union Planters Nat'l Leasing Inc. v. Woods, 687 F.2d 117 (5th Cir. 1982) ...........26

Watterson v. Page, 987 F.2d 1 (1st Cir. 1993) .......................................................23

Wortman v. Beglin, No. 03-495, 2007 WL 2375057, at *2 (D.N.J. Aug. 16, 2007)
    .............................................................................................................................37

## **Statutes Cited**

28 U.S.C. § 636(b)(1)(A) ................................................................ 12, 36

42 U.S.C. § 1983 ............................................................................1, 14

N.J.S.A. 10:6-1, et seq. ...................................................................2, 33

N.J.S.A. 59:6-5.................................................................... 3, 19, 20

N.J.S.A. 59:6-6.................................................................. 3, 4, 19, 20

## **Rules Cited**

D.N.J. L.Civ.R. 7.1(i)....................................................................... 22

Fed. R. Civ. P. 12 ............................................................................ 17

Fed. R. Civ. P. 15(c)(1)(B) ............................................................. 31

Fed. R. Civ. P. 72(a) ....................................................................... 12

## RELATED CASES AND PROCEEDINGS

The State Defendants aver that there are no related cases or proceedings. This matter has not previously been before this Court. The State Defendants are unaware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this Court or any other judicial body.

## COUNTERSTATEMENT OF THE CASE

This matter arises from the suicide of plaintiff-appellant Robert Mullin ("Mullin" or "decedent") on January 17, 2009. At the time of his death, Mullin was an inmate housed at the Central Reception and Assignment Facility (CRAF) in Trenton, New Jersey, a correctional facility operated by the New Jersey Department of Corrections ("NJDOC"). (A173, A667).[1]

Mullin's mother, Joan Mullin, filed this action on his behalf as administrator of his estate, alleging violations of the federal and state constitutions and state common law. Plaintiffs' initial complaint was filed on January 14, 2011. (A10). The Plaintiffs alleged therein that the State Defendants deprived the decedent of Constitutional rights secured by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Articles 1 and 12 of the New Jersey State Constitution. Plaintiffs sought redress for the federal claims pursuant to 42 U.S.C. § 1983, while

---

[1] "A" refers to the jointly agreed-upon appendices filed with the court by Plaintiff's counsel, while "Ab" refers to the Plaintiff-Appellants' brief on the merits.

State Constitutional claims were brought under the New Jersey Civil Rights Act ("NJCRA"), <u>N.J.S.A.</u> 10:6-1, <u>et</u> <u>seq</u>.  Plaintiffs also raised State common law claims including negligent hiring, training and supervision, intentional infliction of emotional distress, and abuse of process. (A10-A11).

The Plaintiffs' Second Amended Complaint ("SAC") sets forth the essential facts of the case as follows.  In May 2008, plaintiff Robert Mullin was transferred from a correctional facility to a residential community release program (halfway house) owned by co-defendant Kintock Group. (A5).  On January 15, 2009, while at the halfway house, Mullin's mental state began to deteriorate. (A6).  Kintock staff discovered cocaine and opiates in his possession. (<u>Id.</u>).  As a result, Mullin was returned to NJDOC custody and transported to South Woods State Prison ("SWSP"), where he underwent a medical evaluation. (<u>Id.</u>).  Mullin tested positive for opiates and cocaine, and the next day, on January 16, 2009, he was transferred to CRAF.  (<u>Id.</u>).

At approximately 4:23 a.m. on January 17, 2009, defendant-appellee Officer Dimler found Mullin unresponsive in his cell at CRAF after he had hanged himself with a bed sheet that had made into a noose. (A8).  Staff performed CPR on Mullin, but he was pronounced dead at 4:49 a.m. (<u>Id.</u>).

Plaintiffs also named as defendants CRAF Administrator Karen Balicki, Director Robert Patterson, and Director Marie Dunlap-Pryce, based on their supervisory roles at the facility. (A6).  Plaintiffs alleged that the State Defendants

failed to properly evaluate and supervise the decedent despite the fact that, in the Plaintiffs' view, he presented as a clear case for a suicide risk. The Plaintiffs contended that defendants Dimler and Teel knew or should have known that the decedent presented a suicide risk due to his history of suicidal tendencies, mental illness, and his having tested positive for drugs. (A9). The Plaintiffs further claimed that had Dimler and Teel reviewed the decedent's intake records from Kintock, he would have either been placed in a medical ward or been subject to constant supervision. (Id.). The Plaintiffs further argue that had the decedent been so confined and/or supervised, he would not have been in a cell with bed sheets or other items that could have been used to inflict self-harm. (Id.).

On November 1, 2013, the District Court granted the State Defendants' motion to dismiss the SAC. Addressing the Plaintiffs' state common law claims, the court held that the State Defendants were "shielded from liability under state law by the New Jersey Tort Claims Act," (A15), specifically N.J.S.A. 59:6-5 and 6-6, which respectively immunize state employees from liability for diagnosing or failing to diagnose a mental illness or drug dependence, and for decisions regarding confinement of a person for mental illness or drug dependence. (A15-A16). The District Court reasoned that "close calls in application [of State tort immunity laws] are resolved in favor of immunity, not liability." (A17). The court further noted that

> The case law demonstrates wide-ranging applicability of this type of immunity. It applies to police officers confining

3

(or failing to confine) individuals for mental health reasons. … It applies even where the potential confinement would not be in a mental institution, but rather would be in police custody or in another ward of a hospital not specific to mental health. The Court therefore rejects Plaintiffs' arguments that the potential confinement under this provision must be in a mental institution. The Court is not persuaded by Plaintiffs' attempts to remove this case from the realm of the provision's immunity based on the fact that the decedent was already confined because he was incarcerated. The decision before Movants was whether to further confine the decedent from the general prison population as a result of potential mental-health issues. Movants decided against such confinement, and therefore, their decision is one considering "whether to confine a person for mental illness or drug dependence." N.J.S.A. 59: 6- 6.

[A23].

The District Court found that the Plaintiffs failed to plead federal or state constitutional claims arising from Mullin's suicide because (1) such claims were supported only by conclusory language; and (2) even accepting every inference in the Plaintiffs' favor, the State Defendants' acts as alleged by the Plaintiffs amounted to negligence and not the reckless indifference that must be shown in order to hold prison authorities liable on constitutional grounds for an inmate suicide. Specifically, the District Court held with respect to both federal and state constitutional claims that

the allegations that Dimler and Teel failed to review the transfer records or evaluate the decedent for intoxication… even if taken as true, would merely establish negligence and would fall short of the reckless indifference required by Colburn II... Plaintiffs have not pled -- beyond conclusory statements that merely restate the legal standard -- actual

4

knowledge on the part of Dimler or Teel. Nor have Plaintiffs pled that they "should have known" of the decedent's vulnerability to suicide, as the Complaint fails to point to any actions of the decedent that would have alerted Dimler or Teel to the fact that he was a suicide risk. Plaintiffs have not alleged how Teel and Dimler, in the course of their duties, would have been aware of the decedent's particular vulnerability. This "should have known" standard requires "something more than a negligent failure to appreciate the risk of suicide," and the Complaint, viewed in the light most favorable to Plaintiffs, does not provide allegations capable of satisfying this standard … Therefore, the Complaint will be dismissed in its entirety as to Dimler and Teel.

[A31-A32].

The District Court also denied the Plaintiffs' request that the Court grant the motion to dismiss without prejudice and "permit additional discovery to assist in the development of the claims in the Complaint." (A33). The court held that

the lack of specificity [of the allegations in the SAC] is not "fairly attributable to the defendants' control of required information." ... The Court finds that these allegations seek to impose liability against these defendants on a negligence standard, which is not permitted for prison suicide cases. Therefore, the Court declines to permit discovery to allow development of the claims against Dimler and Teel.

[A33].

As for the constitutional claims against defendants Balicki, Patterson, and Dunlap Price ("the Supervisory Defendants"), the District Court ruled that they could not be held liable merely due to their supervisory relationship over Dimler and Teel, and because the Plaintiffs also failed to allege facts sufficient to support a claim that

the Supervisory Defendants were personally involved in the events that culminated with the decedent's suicide. (A37-A38).

On November 25, 2013, the Plaintiffs moved for reconsideration of "two aspects of the Opinion and Order: (1) the dismissal of all of the claims against Officer Dimler...; and (2) the dismissal of the claims under the New Jersey Tort Claims Act against Nurse Byrd..." (A45).[2] There were two sets of documents produced in discovery that purportedly came to Plaintiffs' counsel's attention after the parties had fully briefed the motions to dismiss. (Id.). The Plaintiffs averred in their motion for reconsideration that on July 17, 2013, that the State Defendants had produced policies and procedures allegedly establishing that defendants Dimler and Byrd violated various NJDOC policies and "failed to properly perform their ministerial functions." (A46). Also, in April 2013 the State Defendants had produced to Plaintiffs' counsel additional discs of discovery, which Plaintiffs' counsel had "misplaced and misfiled[,]" an oversight she claimed in a March 2014 letter to the Court that she did not discover "until after February 26, 2014," well after the District Court granted the State Defendants' motion to dismiss. (Id.). The Plaintiffs sought to use these "new" sets of discovery to support their motion to reconsider the grant of the State Defendants' motion to dismiss, and once again amend their complaint to include a considerable amount of new facts, a new cause of action, and new defendants.

---

[2] On appeal, the Plaintiffs are challenging the District Court's decision to grant immunity under the NJTCA to defendant Dimler.

On July 25, 2014, the District Court denied the motion, finding, <u>inter alia</u>, that the Plaintiffs had failed to show that the Court overlooked anything when granting the motion to dismiss.  Nevertheless, the Court gave the Plaintiffs thirty days to move for leave to amend their complaint. (A52-A54).

Plaintiffs filed their motion to amend on August 22, 2014, annexing to it a proposed Third Amended Complaint which included new facts to already-existing claims offered in support of the previously-dismissed claims against the State Defendants and Nurse Byrd, and new defendant NJDOC employees and officers including Officer Robert Russo, Chief Ralph Yansek, Lt. Dudich, Sgt. B. Stern, Sgt. Thomas Spence, and Officer Eric Large. (A62).  The TAC also proposed a new cause of action for civil conspiracy. (<u>Id.</u>).

The Court denied the motion, agreeing with the State Defendants that after nearly three years of litigation, the near ten-month delay caused by Plaintiffs' counsel's misplacement of the "April 2013 evidence," and Plaintiff's counsel's failure to apprise the court of the July 2013 evidence prior to the disposition of the then-still pending motion to dismiss, the TAC was being proposed with undue delay.  The Court began its decision detailing the salient points of procedural history up until that time :

> On November 1, 2013, the Court issued a 40-page decision granting in large part the Motions to Dismiss. [Docket Entry No. 153]. The claims against Balicki, Paterson, Dunlap-Pryce, Dimler, and Teel were dismissed. The state law claims against Nurse Byrd and the claims against her in her official capacity were dismissed, leaving only the §

7

1983 claims as to Nurse Byrd. [Docket Entry No. 154].
Thus, as of November 1, 2013, "Defendants Jane Byrd,
L.P.N, and Kintock Group [were] the only viable
defendants remaining in the action." [Docket Entry No.
154]. On November 13, 2013, Plaintiff moved for
reconsideration, citing for the first time the information
obtained by way of the July 2013 Production. In addition,
and by the same motion, Plaintiff sought leave to amend the
complaint yet again. By Order dated November 15, 2013,
the Court instructed Plaintiff to re-file the motion for
reconsideration as a separate motion, with the motion to
amend awaiting a determination of the reconsideration.
[Docket Entry No. 158). Accordingly, Plaintiff re-filed the
motion for reconsideration on November 23, 2013. [Docket
Entry No. 160). That motion was fully briefed on January
2, 2014 [Docket Entry Nos. 174-175]; by letter dated
March 4, 2014, however, Plaintiff sought leave to
supplement the record to include evidence from a newly
discovered disc that had previously been misfiled. [Docket
Entry No. 182). Plaintiff was given leave to re-file the
motion for reconsideration, and did so on April 24, 2014.
[Docket Entry Nos. 184, 185). By Order and Opinion
issued on July 25, 2014, the Court denied reconsideration
but gave Plaintiff leave to file a motion to amend the
complaint. [Docket Entry No. 203).

[A61-A62] [emphasis added].

Critically, the Plaintiffs argued below that they misplaced the discovery discs

produced to them by the State Defendants in April 2013, but not the materials the

State Defendants produced in July 2013; they do not deviate from this position on

appeal. This is significant because it is undisputed that Plaintiffs' counsel did not seek

to modify the record for the motion to dismiss until after the motion was decided, in

November 2013, despite having already been aware of one pertinent set of discovery

and being in possession of but purportedly unaware of another. After an exhaustive

evaluation of the arguments raised by both parties, the District Court denied the

motion in its entirety and began by making the following findings:

> That there has been delay is beyond dispute. Plaintiff
> received the productions at issue in April and July 2013 but
> did not raise the relevance of the new information to the
> Court while the Motions to Dismiss were pending, nor did
> she seek leave to amend. Instead, she only did so after those
> motions had been granted in large part. When she finally
> alerted the Court to the fact that there was allegedly new
> evidence that would impact the ruling on the Motions to
> Dismiss, it was by way of a motion for reconsideration. At
> the time, Judge Cooper noted that Plaintiff did so without
> offering any explanation whatsoever for having waited so
> long. The question, therefore, is whether Plaintiff has now
> sufficiently explained the reasons for that delay such that
> the amendment should be allowed to proceed.
>
> …
>
> At the outset, the Court notes that there really are two
> elements of delay at issue: that which relates to the
> information in the July 2013 Production, which Plaintiff
> now contends had a direct bearing on the issues to be
> decided by the Motions to Dismiss then pending before
> Judge Cooper, and Plaintiff's delay with regard to the
> information contained on the Misplaced Disc, of which
> counsel says she was unaware until February 2014.
>
> [A72-A73].

Plaintiffs' counsel averred in her motion papers that she did not advise the Court of

the July 2013 production and did not seek to amend the then-pending motions to

dismiss because by July 2013 the motions were fully briefed and she believed she was

9

no longer permitted to reopen the motion record. (Id.).  In response, the Court noted

that "Plaintiff has not refrained from seeking leave from the Court for various reasons,

including to re-open the record on a motion." (A73).  Plaintiffs' counsel also

explained that she had made a tactical decision not to include information from the

July 2013 discovery in her oppositions to the motions because she believed the

oppositions to be sufficiently meritorious. (A74).  The District Court rejected this

explanation, finding that "[i]t was only after she was unsuccessful and much of the

complaint was dismissed that she decided to introduce the new information from the

July 2013 Production, by way of her motion for reconsideration." (A74).

As for the misplaced April 2013 discovery, the District Court noted the

numerous opportunities Plaintiff had to realize that the disc was misfiled or otherwise

not where it should be and "follow up or at least make inquiry." (A75).  The Court

detailed these opportunities in considerable detail, noting that

> First, there was the cover letter that accompanied the April
> 2013 production. The letter specifically indicated that the
> production included bates numbered documents in the
> range of 0001-0392, including 0001-305, which were being
> produced as confidential under the Consent Protective
> Order. [Docket Entry No. 175 at 2]. In this regard,
> Defendants ask how it could not have occurred to anyone
> that they had documents in the Bates range of 0306-0918
> but not from 0001-0305. DOC Opposition at 12. They also
> point to the supplemental production made in October
> 2013. In that production, Defendants refer to and rely on
> the SID report, which Plaintiff now claims is so critical to
> her case that she should be allowed to amend again. The
> document is referred to by name and by bates number; if

Plaintiff did not have a copy of the SID report or of
documents in that bates range, she should have realized as
much when she reviewed the October production.
Defendants also point out that the October production was
provided to Plaintiff two additional times, first with the
DOC Defendants' December 30, 2013 submission to the
Court, and then again, in January 2014, when Plaintiffs'
counsel asked for another copy. At no point did Plaintiff
ask any follow up questions or make any inquiry as to the
contents of the Misplaced Disc. <u>Thus, Defendants argue
that it is Plaintiffs own lack of diligence that caused the
delay, and this should not be excused. The undersigned
agrees.</u>

[A75-A76] (emphasis supplied).

The District Court also rejected the Plaintiffs' argument that the State

Defendants would not experience undue prejudice should the amendments be granted.

The Court found that due to the amount of time and resources already expended in

motion practice over the pleadings, including multiple motions to dismiss and

responses to motions to amend the complaint and for reconsideration, allowing the

case to proceed against the State Defendants would result in undue prejudice. (A76-

A77).  As the Court explained,

there would in fact be prejudice to the defending parties if
the amendment would allowed to proceed. The current
defendants, as well as those who have already been
dismissed, have spent significant resources on this
litigation, and they would essentially be forced back to
square one. Furthermore, there is nothing beyond
speculation to support the notion that the proposed new
defendants are on notice of the action or the claims against
them, or that there would not be prejudice to them in
defending on the merits. Plaintiff has failed to articulate a

11

sufficient basis for these claims to relate back under Rule
15(c).

[A77].

Accordingly, the Court denied the motion to amend the complaint and the matter

proceeded as to all claims and defenses not expressly dismissed in the Opinion. (A78).

The Plaintiffs appealed the decision to deny the motion to amend to the District

Judge assigned to the case, the Hon. Mary L. Cooper, U.S.D.J., pursuant to Fed. R.

Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), which authorizes a District Court to

modify, vacate, or reverse non-dispositive magistrate judge decisions that are clearly

erroneous or contrary to law. (A80). In an order dated July 13, 2015, Judge Cooper,

having found no such deficiencies with Judge Goodman's reasoning, affirmed the

decision to deny the Plaintiffs' motion to amend and terminated the case. (A85).[3]

## Summary of Argument

This Court should affirm the four Orders of the District Court. The orders

granting the State Defendants' motion to dismiss the SAC and denying the Plaintiffs'

---

[3] The Plaintiffs appeal from the District Court's decisions only to the extent that they dismissed claims against defendant Dimler or prevented amendment of the complaint to raise claims against him. (Ab2). However, since many of the Plaintiffs' arguments on appeal include discussions of and present arguments implicating the remaining State Defendants, their names appear in the caption submitted by the Plaintiffs, and these Defendants have been designated as parties to the appeal by this Court, the Office of the Attorney General has entered an appearance on behalf of each of the State Defendants. Although defendant Dimler is the only State Defendant against whom the Plaintiffs seek to reinstate this action, the defense will refer to the State Defendants when responding to claims made against them as a collective as opposed to just against defendant Dimler.

motion for reconsideration of that decision should be affirmed because the facts as pleaded in the SAC were insufficient to hold the State Defendants liable for Robert Mullin's suicide under either constitutional or State common law grounds. The District Court properly denied the Plaintiffs' motion for leave to file a Third Amended Complaint (TAC) because they failed to present the information in the proposed TAC to the Court while the prior motion to dismiss was still pending, did so for the first time nearly three years after the first complaint was filed, and only after the State Defendants' motion to dismiss had been granted. The Plaintiffs had been in possession of relevant discovery materials since July 2013, which they chose not to bring to the Court's attention. They also purportedly misplaced evidence that the State Defendants had produced to them in April 2013. The record shows that the Plaintiffs received correspondence in the following months that referred to the April 2013 discovery, and therefore they should have taken steps to locate that discovery or request it once again. Thus, the District Court's holding that allowing a third amended complaint would cause undue delay, and by extension unduly prejudice the State Defendants, was proper and should be affirmed. For the same reasons, the District Judge properly found that the Magistrate Judge's decision to deny the motion to amend was not based on an error of law that would warrant reversal.

**ARGUMENT**

**POINT I**

**THE DECISION TO GRANT THE STATE DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT SHOULD BE AFFIRMED BECAUSE THE FACTS AS PLEADED THEREIN WERE INSUFFICIENT TO ESTABLISH LIABILITY UNDER SECTION 1983, THE NEW JERSEY CIVIL RIGHTS ACT, AND STATE COMMON LAW.**

**A. Standard of Review**

The Third Circuit reviews de novo a district court's grant of a motion to dismiss. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). Dismissal on the pleadings is appropriate if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). When considering a motion to dismiss, the appellate court must accept all allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-movant. Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

**B. The Decision to Grant the Motion to Dismiss Was Proper and Should be Affirmed.**

  1. The Plaintiffs' Federal and State Constitutional Claims Pursuant to 42 U.S.C. § 1983 and the NJCRA

The Plaintiffs failed to plead a valid constitutional claim against the State Defendants for their purported failure to prevent Robert Mullin's suicide. A plaintiff

bringing a section 1983 claim based on a prison suicide "has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability.'" Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). Though the Third Circuit has not expressly defined the standard of "reckless indifference," it has stated that it implies that there was a strong likelihood of self-harm and this standard requires that the defendant corrections officials "knew or should have known" of that strong likelihood. Id. at 1024.[4]

With respect to the knowledge requirement, "[c]ustodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." Id. at 1025. Similarly, the Third Circuit stated that the phrase "should have known" "connotes something more than a negligent failure to appreciate the risk of suicide...though something less than a subjective appreciation of that risk." Id. When considering whether a prison official

---

[4] As the District Court aptly noted, the NJCRA is the state counterpart of section 1983 for violation of rights secured under New Jersey's Constitution. See Green v. Corzine, No. 09-1600, 2011 WL 735719, at *7 (D.N.J. Feb. 22, 2011). In Green, the District Court held that the "NJCRA is generally interpreted to be coextensive with its federal counterpart." Thus, the State Defendants' arguments with respect to the Plaintiffs' federal constitutional claims section apply equally to their state constitutional claims under the NJCRA.

should have known of an inmate's risk of suicide, the "strong likelihood" referenced above must be "so obvious that a lay person would easily recognize the necessity for preventative action." Id. (internal quotations omitted). Moreover, "the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." Id. (emphasis supplied) (internal quotations omitted).

The District Court dismissed the SAC because the allegations therein were insufficient to establish a prima facie case that the State Defendants knew or should have known that the decedent presented a suicide risk or that they acted recklessly indifferent with regard to that risk. The operative allegations in the SAC against the rank-and-file Defendants Dimler and Teel were that they knew or should have known that the decedent presented a suicide risk, should have known that he had a history of suicide and psychiatric illness, did not review his transfer records from the Kintock halfway house, and did not test him to see if he was intoxicated. (A419-A429). The first allegation is a recitation of the knowledge element of a Constitutional inmate suicide claim, while the second one is a conclusory means of restating that same element. The last two claims that Dimler and Teel did not review the decedent's mental health or intake records are arguably sufficient to state a cause of action for negligence, but not for a constitutional claim. The SAC details no actions taken by Dimler and Teel that could reasonably be characterized as reckless; at best, the

16

Plaintiffs merely characterize their roles as such without further elaboration. Moreover, the Plaintiffs cite to no authority indicating that a corrections officer's failure to review a decedent inmate's records would in-and-of-itself constitute reckless indifference.

On appeal, the Plaintiffs argue that the District Court improperly applied the heightened standard of review for a Section 1983 claim set forth in Freedman v. City of Allentown, 853 F.3d 1111 (3d Cir. 1988), a ruling which they argue has been overturned. Freedman stood for the proposition that beyond the pleading standards applicable to Fed. R. Civ. P. 12, a civil rights complaint filed pursuant to Section 1983 must "contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiff." Id. at 1114. This Circuit has held that the "modicum of factual specificity" standard has effectively been overruled. See Alston v. Parker, 363 F.3d 229, 233 (3d Cir. 2004) ("Fundamentally, a heightened pleading requirement for civil rights complaints no longer retains vitality under the Federal Rules."). Plaintiffs accurately point out that in its opinion granting the motion to dismiss, the District Court did indeed recite the Freedman standard when discussing the constitutional claims.  (Ab33-Ab34, A12). However, the decision to grant the motion to dismiss was based on the ordinary pleading standards set forth in Iqbal and Twombly; the Court found that the Plaintiffs failed to plead an inmate suicide claim because they did not satisfy the elements of Colburn as explained above. The entirety

17

of the District Court's opinion granting the motion to dismiss focused on the Plaintiffs' failure to establish the <u>Colburn</u> elements. There is no apparent application therein of any "heightened" pleading standard, no claims that the Plaintiffs were required to set forth a modicum of specificity the defendants' acts and the suffered harms that is beyond what is required under the ordinary pleading standards in <u>Iqbal</u> and <u>Twombly</u>.

### 2. The State Law Tort Claims

In the SAC, the Plaintiffs raised numerous causes of action under State tort law including negligent hiring, training and supervision, intentional infliction of emotional distress, and abuse of process. (A10-A11). The State Defendants moved to dismiss all non-Constitutional State law claims by invoking two immunities raised in the New Jersey Tort Claims Act ("NJTCA"). The District Court, noting that difficult questions of State law-created immunities must be resolved in favor of immunity over liability, agreed with the State Defendants that they were immune from liability arising from all of Plaintiffs' tort claims, and as a result dismissed these claims. This ruling should be affirmed.

Plaintiffs argues on appeal that defendant Dimler, who either knew or should have known about the decedent's history of mental illness, suicidal tendencies, and substance abuse, allowed him to be housed without placing him in a medical or psychiatric ward or providing him with enhanced supervision. The NJTCA shields

18

New Jersey public entities and employees from liability for failing to diagnose a

mental condition and for any decision regarding the confinement of a person for

mental illness.  <u>N.J.S.A.</u> 59:6-5 holds in relevant part that

> Neither a public entity nor a public employee is liable for
> injury resulting from diagnosing or failing to diagnose that
> a person is afflicted with mental illness or is a drug
> dependent person or from failing to prescribe for mental
> illness or drug dependence...

Similarly, <u>N.J.S.A.</u> 59:6-5 provides that

> Neither a public entity nor a public employee is liable for
> any injury resulting from determining in accordance with
> any applicable enactment: (1) whether to confine a person
> for mental illness or drug dependence; (2) the terms and
> conditions of confinement for mental illness or drug
> dependence...

It is well-established that courts are to interpret the NJTCA's immunity

provisions broadly, and that close calls in application are to be resolved in favor of

immunity. <u>See</u> <u>e.g.</u>, <u>Charpentier v. Godsil</u>, 937 <u>F.</u> 2d 859, 865 (3d Cir. 1991);

<u>Greenway Dev. Co. v. Bor. of Paramus</u>, 750 <u>A.</u>2d 764, 767 (N.J. 2000); <u>Ludlow v.

City of Clifton</u>, 702 <u>A.</u>2d 506, 508 (N.J. App. Div. 1997); <u>Perona v. Twp. of Mullica</u>,

636 <u>A.</u>2d 535, 539 (N.J. App. Div. 1994).

The immunity conferred by <u>N.J.S.A.</u> 59:6-6 is not limited to confinement within

a mental institution. The linchpin for such immunity "is a discretionary decision

whether to confine a person for the care and treatment of mental illness rather than the

particular type of facility in which a person may be confined." <u>Ludlow</u>, 702 <u>A.</u>2d at

508. Immunity is also not limited to physicians and can apply to any public employee. Perona, 636 A.2d at 539. Additionally, immunity applies to all determinations in the commitment process. Ludlow, 702 A.2d at 508.

Here, it is undisputed that the common law claims against the State Defendants arise from their purported failure to properly confine the decedent as a result of his mental illness and substance abuse. Their actions as alleged by Plaintiff are immunized by N.J.S.A. 59:6-5 and 6-6, which have been broadly interpreted by New Jersey's Appellate Division in favor of granting immunity. Thus, the District Court's decision to grant the State Defendants immunity for all State common law causes of action raised against them was proper and should be affirmed.

## POINT II

### THE DISTRICT COURT'S DENIAL OF PLAINTIFFS' MOTION FOR RECONSIDERATION SHOULD BE AFFIRMED BECAUSE THE DECISION WAS AMPLY SUPPORTED BY THE RECORD, DID NOT CONSTITUTE AN ABUSE OF DISCRETION, AND DID NOT RESULT FROM LEGAL ERROR.

**A. Standard of Review**

The Third Circuit reviews a district court's order denying a motion for reconsideration for an abuse of discretion. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). A district court should be "loathe to [reconsider its decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice."

Lesende v. Borrero, 752 F.3d 324, 339 (3d Cir. 2014) (quotation marks and citation omitted). "The scope of a motion for reconsideration . . . is extremely limited[,]" and should "be used only to correct manifest errors of law or fact or to present newly discovered evidence." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). New evidence is evidence that could not have been submitted to the court earlier because it was not previously available, not merely evidence submitted following an adverse court ruling. Id. at 415-16.

For the reasons that follow, the District Court's decision to deny the Plaintiffs' motion to reconsider its order granting the State Defendants' motion to dismiss the SAC should be affirmed.

### B. The Plaintiffs Did Not Offer the Legal or Evidentiary Support Necessary to Justify the Extraordinary Relief of an Order Reconsidering a Prior Decision of the District Court.

Reconsideration is an "extraordinary remedy" that should be granted "sparingly." Damiano v. Sony Music Entm't, Inc., 975 F.Supp. 623, 634 (D.N.J. 1997) (quoting N.L. Indus., Inc. v. Commercial Union Ins. Co., 935 F.Supp. 513, 516 (D.N.J. 1996); see also Lesende v. Borrero, supra.  To succeed on such a motion, Plaintiffs "must show more than a disagreement with the court's decision." Daminao, 975 F.Supp. at 634 (quoting Panna v. Firstrust Sav. Bank, 760 F.Supp. 432, 435 (D.N.J. 1991).  When bringing a motion for reconsideration, the moving party has the burden of bringing to the court's attention "the matter or controlling decisions which

the party believes the Judge or Magistrate Judge has overlooked..." D.N.J. L.Civ.R. 7.1(i). Reconsideration motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." N.L. Indus, Inc., supra, 935 F.Supp. at 516.

Motions for reconsideration should only be granted "where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent manifest injustice arises." Id. (internal citation omitted).

The Plaintiffs sought reconsideration of the order granting the motion to dismiss to the extent that it ordered dismissal of all claims against defendant Dimler. (A45). They relied upon the "new evidence" ground for reconsideration set forth in N.L. Indus, supra. On appeal, the Plaintiffs contend that the District Court erred in holding that the SAC was conclusory because in their view, the Court's application of the federal standards of pleading was excessively harsh and restrictive. (See e.g., Ab32-A38; A49-A51). Their motion for reconsideration was a meritless attempt to relitigate the motion to dismiss, which this Circuit has deemed an improper use of a motion for reconsideration. The Plaintiffs attached evidentiary materials to the motion in support of the claims made in the SAC. Also included was a proposed Third Amended Complaint ("TAC"). However, the Court deemed the SAC to only contain conclusory allegations against the Defendants. The Court properly made this decision irrespective

22

of any materials outside the SAC itself and the opposition papers.  A motion to dismiss is based on the pleadings themselves, and only a limited universe of information outside of the pleadings may be considered, including exhibits attached thereto, matters of public record, and undisputedly authentic documents. See Watterson v. Page, 987 F.2d 1 (1st Cir. 1993).  The Court deemed the way in which the Plaintiffs described the violations against them to be insufficient to raise any cause of action against the State Defendants.  The District Court rejected the Plaintiffs' new evidence at the motion for reconsideration stage because "[w]hether discovery could ultimately prove or even support the allegations does not alter their conclusory nature in the first instance, and it is the words chosen, and not the potentially available proof, that the Court considers on a motion to dismiss." (A51).  Indeed, the motion for reconsideration was based not on the legal sufficiency of the SAC, nor could the newly-presented evidence have been used to further support the claims therein. Rather, the motion was based on the allegations in the proposed TAC, and the evidence appeared to have been submitted in support thereof.

The District Court ruled accordingly, finding that the Plaintiffs' "new evidence" did not warrant reconsideration of its order granting the State Defendants' motion to dismiss because the SAC, as written, remained insufficiently pled. (A52).  The District Court also correctly found that the Plaintiffs used their motion for reconsideration to raise new allegations and failed to show that the Court overlooked anything when

reviewing the motion to dismiss. Moreover, as will be discussed in detail in Point III below, the Plaintiffs had access to this evidence but failed to include it in opposing the State Defendants' motion to dismiss. A motion for reconsideration is not a mechanism "to raise arguments or present evidence that could have been raised prior to the entry of judgment." N.L. Indus, Inc., supra, 935 F.Supp. at 516 (emphasis added). Thus, the Plaintiffs present no credible argument on appeal that warrants disturbing the District Court's finding.

Perhaps most importantly, any claim that the Court abused its discretion when it denied the motion for reconsideration was arguably extinguished when it granted the Plaintiffs leave to move to amend their complaint. The Court determined that what the Plaintiffs truly sought to do through its motion for reconsideration was to once again amend the complaint, based on what they represented was pertinent information that would further support claims already in the complaint and also underlie new ones.

## POINT III

**THE ORDER DENYING THE PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE AFFIRMED BECAUSE THE PLAINTIFFS RAISED THOSE AMENDMENTS WITH UNDUE DELAY.**

### A. Standard of Review

The standard for appellate review of the trial court's denial of amendment is abuse of discretion. Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993), citing Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

### B. Granting Plaintiff Leave to File a Third Amended Complaint Would Have Unduly Delayed the Final Disposition of This Matter.

A court justifiably may deny leave to amend a complaint on grounds such as undue delay, bad faith, dilatory motive and prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). More specifically, the District Court may deny leave if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the non-moving party. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008). A delay may become undue "when a movant has had previous opportunities to amend a complaint" but instead "delays making a motion to amend until after [judgment] has been granted to the adverse party," and when "allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new

25

theories." Jang v. Boston Sci. Scimed, Inc., 729 F.3d 357, 368 (3d Cir. 2013) (quoting Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001)).

Moreover, "a significant, unjustified, or undue delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 629 (3d Cir. 2013). Delay may be undue in such a manner when a movant has had previous opportunities to amend a complaint. See Lorenz v. CSX Corp., 1 F.3d at 1414 (a three year lapse between filing of complaint and proposed amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend); see also Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654-55 (3d Cir. 1998) (rejecting proposed second amended complaint where plaintiffs were pleading facts that could have been pled earlier).

When a party delays amendment until after court has granted judgment in favor of the non-moving party, the Third Circuit has recognized that the interests in judicial economy and finality of litigation may become particularly compelling. See Cureton v. NCAA, supra; Diersen v. Chicago Car Exch., 110 F.3d 481, 489 (7th Cir. 1997); Humphreys v. Roche Biomed. Lab. Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Union Planters Nat'l Leasing Inc. v. Woods, 687 F.2d 117, 121 (5th Cir. 1982); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598, n.2 (5th Cir. 1981).

Here, the Plaintiffs had ample opportunity to amend the complaint prior to filing their motion for reconsideration and motion to amend, and they possessed the materials necessary to do so.  They made no attempt to move to amend to include the allegations proposed in the third amended complaint until after the Court granted the motion to dismiss, despite having been in possession of the evidence underlying the proposed new claims since April 2013 and July 2013.  These sets of discovery documents will be discussed in turn below.

     a. <u>April 2013 Discovery</u>

In a March 4, 2014 letter to the District Court seeking leave to supplement the record on the motion for reconsideration, Plaintiffs' counsel averred that she misplaced one disc (out of four) produced to her by the State Defendants which purportedly contained critical evidence in support of her claims. (A719-A721). The Plaintiffs do not dispute that the State Defendants produced these materials in April 2013.  However, Plaintiffs' counsel apparently did not realize that her office had received this disc until February 2014. Further, on or about October 24, 2013, Plaintiffs' counsel received responses to her supplemental notice to produce, one of which expressly referred to the Bates-labeled discovery she purportedly misplaced in April 2013 (referring to the "Special Investigations Division (SID) report dated February 27, 2009, with attachments, previously produced as bates-labeled documents CONFIDENTIAL MULLIN 239-CONFIDENTIAL MULLIN 295).  (A853). The

Plaintiffs, in their January 2, 2014 reply to the motion for reconsideration filed regarding the second amended complaint, included as their own exhibits the cover letters from the Attorney General's office that accompanied the April 2013 "missing disc" of discovery. (A1098-A1099). Plaintiffs' counsel received another copy of the discovery response (which identified the SID report as "previously produced" discovery) when it was e-mailed to counsel on January 6, 2014 at counsel's request (A856), months before Plaintiffs' counsel advised the court that she just became aware of the misplaced evidence. The Plaintiffs filed their motion to amend on August 22, 2014. (A788-A793). This was the first time the information in the April 2013 discovery was presented in a proposed pleading, even though (1) it was produced in April 2013; (2) the State Defendants had made references to it in the months that followed, and (3) the fact that the Plaintiffs had become aware of the missing disc by February 2014.

  b. July 2013 Discovery

The Plaintiff's failure to move to plead new claims based on the "policies and procedures" evidence despite having possessed it by July 2013 constitutes undue delay. The Plaintiffs sought to amend the complaint pursuant to evidence that they possessed in July 2013, months before Plaintiffs' counsel announced her intention to amend the complaint yet again. Plaintiffs received this "policies and procedures" evidence before the Court issued its decision on November 1, 2013, but only raised it

for the first time in response to the motion for reconsideration. Plaintiffs' counsel's reasons for not utilizing this evidence to amend the complaint at an earlier date include (1) her belief that she could not reopen the motion record once it was fully briefed, and (2) because she did not think it was necessary to do so. (A71-A73). The first rationale is without merit, as the Plaintiffs had taken action to reopen pending motions on numerous occasions. (A73). As for the second rationale, it was Plaintiffs' counsel's prerogative whether to incorporate newly-acquired evidence into the Complaint. The July 2013 evidence was not inappropriately withheld by the State Defendants, nor was it otherwise not accessible to Plaintiffs' counsel. Despite possessing the necessary discovery to amend the complaint, the fact remains that the Plaintiffs sought to introduce this evidence for the first time only after receiving an adverse decision.

    c. <u>Judicial Economy</u>

The interests of judicial economy and finality of litigation should also be considered. At the time the motion to amend had been filed, this matter had been pending over three-and-half-years. The claims and defenses had been extensively litigated by way of motion practice. The parties exchanged a substantial amount of documentary evidence. The State Defendants were no longer parties to the case because the District Court granted their motion to dismiss. That decision was upheld when the Court denied the Plaintiffs' motion for reconsideration which the Court had

ruled was actually an attempt at amending the complaint.  Not just the parties, but the District Court, had expended resources when addressing the motions to dismiss, which of course was filed in response to the Plaintiffs' conclusory pleadings.  These factors strongly suggest, respectfully, that the District Court's interest in preserving judicial resources would not have been served by granting the Plaintiffs leave to amend the complaint yet again.

It should also be noted that the Plaintiffs seek to add six new defendants. While the Office of the Attorney General is not authorized to act on the prospective defendants' behalf, their addition to this case would most assuredly further delay the final determination of this matter as to the current State Defendants regardless of whether the Attorney General's Office would represent them.  These new defendants would have to acquire representation and engage in motion practice and discovery, a process which could reasonably take an extended period of time.  For these reasons, their inclusion would require the use of substantial judicial resources.

     d. <u>Plaintiffs' Argument That the Allegations in the Proposed TAC Related Back to the Prior Pleadings Was Without Merit.</u>

The Plaintiffs argue that Judge Goodman erred in denying the motion to amend to the extent it would add new defendants (e.g., Officer Robert Russo, Ralph Yansek, Lt. Dudich, Sgt. Stern, Sgt. Spence, and Officer Large).  This argument is without merit.

An amendment to a pleading relates back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -— or attempted to be set out -— in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Relation back is structured "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." Krupski v. Costa Crociere S.p.A., 560 U.S. 538 (2010).

In order to change or add "the party or the naming of the party against whom . . . claim[s] [are] asserted" upon amending a pleading so that it relates back, a plaintiff must show that: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m), the party or parties to be added received [actual or constructive] notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action. Garvin v. Cty. of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003); citing Singletary v. Pennsylvania Dep't of Corrs., 266 F.3d 186, 194 (3d Cir. 2001).

In Singletary, the Third Circuit identified two possible methods by which district courts could impute notice under Rule 15. The first is the "shared attorney"

method, which is based on the notion that when the originally named parties and potential new parties are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196. The second is the "identity of interest" method, which "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197 (internal quotations omitted).

"The relevant inquiry under [the shared attorney] method is whether notice of the institution of [the] action can be imputed to [the defendant sought to be named] within the relevant 120 day period . . . by virtue of representation [he] shared with a defendant originally named in the lawsuit." Id. at 196. The applicable test "is not whether new defendants will be represented by the same attorney, but rather whether the new defendants are being represented by the same attorney." Garvin, supra, 354 F.3d at 223.

The Plaintiffs have failed to show that the newly proposed defendants were given fair notice of the claims now brought against them. Plaintiff's argument that the Attorney General's Office (which is representing the State Defendants, Dimler, Teel, Balicki, Dunlap-Pryce, and Patterson) therefore also is representing the newly proposed defendants under the "identity of interests" and "shared attorney" theories is

32

without merit.  As Judge Goodman noted in her statement of reasons accompanying

her order denying the motion to amend:

> "There is nothing beyond speculation to support the motion that the proposed new defendants are on notice of the action or the claims against them, or that there would not be prejudice to them in defending on the merits.  Plaintiff has failed to articulate a sufficient basis for these claims to relate back under Rule 15(c)."

[A77].

Critically, the Third Circuit has held that notice received by the putative

defendants must be more than notice of the event that gave rise to the cause of action;

it must be notice that the plaintiff has instituted the action. See Bechtel v. Robinson,

886 F.2d 644, 652 n.12 (3d Cir. 1989).  Plaintiff's argument does not establish, at all,

that any prospective defendants were aware that plaintiff had in fact instituted the

lawsuit.

Moreover, the Attorney General's Office cannot represent a State employee

named as defendant in a civil action unless and until the employee (1) requests

representation, and representation is found to be proper, and the representation request

is granted, in accordance with N.J.S.A. 59:10A-1, et seq.  As the language of these

several provisions makes evident, the granting of representation requires an evaluation

process that cannot reasonably be described as a mere technicality. Contrary to what

the Plaintiffs argue in their merits brief (Ab30), it is not the case that the Office of the

Attorney General is the only attorney that can represent the potential new defendants.

State officials are free to retain private attorneys, and the Attorney General has considerable discretion to grant or deny requests for representation.

If the prospective State defendants (Russo, Yansek, Dudich, Stern, Spence, and Large) have any knowledge of this lawsuit to date, a contention which, again, remains speculative, it is not as a result of the Attorney General's Office's involvement in this case in its representation of the State Defendants.

Thus, the District Court's denial of the motion to amend as far as adding new defendants was proper. Plaintiff's failure to properly demonstrate prior notice, and because of the overall prejudice that would result the current defendants and the prejudice to the parties and judicial cost that has already been created in this matter.

### e. Granting the Motion to Amend Would Have Unduly Prejudiced Defendant Dimler

Courts typically find prejudice where granting leave to file an amended complaint would unfairly affect defendants in terms of preparing a defense, which occurs most often when amended claims arise out of different subject matter from existing claims and raise new factual issues. Minter v. Prime Equip. Co., 451 F.3d 1196, 1204-1211 (10th Cir. 2006).  The issue of prejudice requires that the court evaluate the degree of hardship to the defendants if the amendment were permitted. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984). Specifically, courts should consider whether allowing an amendment would result in additional discovery, cost,

and preparation to defend against new facts or new theories. <u>Cureton v. NCAA</u>, 252 <u>F.</u>3d 267 (3d Cir. 2001).

The allegations raised against the State Defendants in the TAC are quite voluminous. Admittedly, these new allegations appear to arise from the same general subject matter that has been at the heart of this action since its inception. However, a new case theory and cause of action are introduced, as are many new facts. Litigating these new claims would have likely required require the District Court to allow for additional discovery, which would have likely resulted in the State Defendants incurring substantial additional costs. New, previously immaterial witnesses would now almost certainly have to be deposed in order to determine the veracity of the new allegations. It is also possible that more written discovery would have to be produced. Substantial time and preparation would have been required for this discovery activity to take place. Therefore, the District Court correctly determined that accepting a Third Amended Complaint would unduly prejudice the State Defendants.

## POINT IV

### THE ORDER AFFIRMING JUDGE GOODMAN'S ORDER DENYING THE MOTION TO AMEND SHOULD BE AFFIRMED BECAUSE IN SO RULING, JUDGE COOPER DID NOT ABUSE HER DISCRETION OR COMMIT AN ERROR OF LAW.

### A. Standard of Review

The standard for appellate review of the trial court's denial of amendment is abuse of discretion. Lorenz v. CSX Corp., 1 F.3d at 1413 (citation omitted).

### B. Judge Cooper's Order Affirming Judge Goodman's Denial of the Plaintiffs' Motion to Amend Should Be Affirmed.

A motion for leave to amend a pleading is non-dispositive, and thus may be entered by a magistrate judge. See 28 U.S.C. § 636(b)(1)(A). A district court may modify, vacate, or reverse non-dispositive magistrate judge decisions that are "clearly erroneous or contrary to law." Id.; see also Jackson v. Chubb Corp., 45 Fed.Appx. 163, 166 n.7 (3d Cir. 2002) (internal quotation and citation omitted). A finding is clearly erroneous when, although there may be some evidence to support it, the reviewing court on considering all of the evidence is left with the definite and firm conviction that a mistake has been committed. See Kounelis v. Sherrer, 529 F.Supp.2d 503, 518 (D.N.J. 2008). A ruling is contrary to law if the Magistrate Judge misinterpreted or misapplied applicable law. Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162, 164 (D.N.J. 1998). The reviewing district court under the clearly erroneous standard of review will not reverse the Magistrate Judge's determination

even if the court might have decided the matter differently. <u>Wortman v. Beglin</u>, No. 03-495, 2007 WL 2375057, at *2 (D.N.J. Aug. 16, 2007).

Judge Cooper thoroughly reviewed the record for the Plaintiffs' motion to amend the complaint and found no reason to disturb Judge Goodman's decision to deny the motion. (A80-A84). The Court noted that Judge Goodman made detailed findings as to the factors causing the delay and provided appropriate reasoning for why the delay unduly prejudiced the State Defendants. (A81-A84). On appeal, the Plaintiffs offer no credible argument or evidence that Judge Cooper committed an error of law in so doing. Thus, Judge Cooper's decision to affirm Judge Goodman's denial of the Plaintiffs' motion to amend did not constitute an abuse of discretion and should be affirmed.

## CONCLUSION

Plaintiffs have failed to present any grounds for disturbing any of the four District Court Orders at issue in this appeal. Thus, this Court should affirm these orders and deny the Plaintiffs' attempts to reinstate the matter.

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY

By:  s/Gregory R. Bueno_____
     Gregory R. Bueno
     Deputy Attorney General

Dated: March 8, 2017

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am an attorney in good-standing of the bar of the Third Circuit.

s/ Gregory R. Bueno_____<br>
Gregory R. Bueno<br>
Deputy Attorney General

Date: March 8, 2017

## CERTIFICATE OF COMPLIANCE WITH *F.R.A.P.* 32(a)(7)(B)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) . The number of words in the brief is 9,207.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word 2010 Times New Roman, font size 14.

s/ Gregory R. Bueno_____<br>
Gregory R. Bueno<br>
Deputy Attorney General

Dated: March 8, 2017

## **CERTIFICATION OF VIRUS CHECK**

I hereby certify that McAfee VirusScan Enterprise, a virus detection program,

has been run on the file containing the Defendants' merits brief and no virus or other

threat was detected.

s/ Gregory R. Bueno_____

Gregory R. Bueno

Deputy Attorney General

Dated: March 8, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory R. Bueno, being of full age, hereby certify that I electronically filed the within brief on behalf of the State Defendants. I further certify that I sent, via overnight mail, an original and six copies of the brief to the Clerk of the Third Circuit Court of Appeals. I further certify that the following party is a filing user and was served electronically by Notice of Docket Activity and overnight mail:

> Shelley Stangler, Esq.
> Law Offices of Shelley L. Stangler, P.C.
> 155 Morris Avenue, Suite 202
> Springfield, NJ 07081
> *Attorney for Plaintiffs*

CHRISTOPHER S. PORRNO
ATTORNEY GENERAL OF NEW JERSEY

By:    s/Gregory R. Bueno
       Gregory R. Bueno
       Deputy Attorney General

Dated: March 8, 2017