# United States Court of Appeals

*for the*

# Third Circuit

Case No. 16-2896

JOAN MULLIN, Administratrix of the Estate of Robert Mullin, deceased
and Joan Mullin, individually

– v. –

ADMINISTRATOR KAREN BALICKI; ROBERT PATERSON; DIRECTOR
MARIE DUNLAP-PRYCE; JANE BYRD, LPN; ERIN MARUSKY, R.N.;
OFFICER DIMLER; NURSE BEATRICE TEEL; KINTOCK GROUP;
COUNTY OF MERCER; JOHN DOES 4-10, (as yet identified and unknown
governmental, county, or state officials, supervisors, agents or employees);
ABC ENTITIES 1-10, (as yet identified and unknown governmental, county,
or state officials, supervisors, agents or employees)

Joan Mullin,

*Appellant*

ON APPEAL FROM ORDERS ENTERED IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY, TRENTON AT NO. 3:11-CV-00247
THE HONORABLE MARY L. COOPER, U.S.D.J.

## REPLY BRIEF ON BEHALF OF APPELLANT JOAN MULLIN

LAW OFFICES OF SHELLEY L. STANGLER, P.C.
*Attorneys for Appellant Joan Mullin*
155 Morris Avenue, Suite 202
Springfield, New Jersey 07081
(973) 379-2500

*On the Brief:*
    SHELLEY L. STANGLER, ESQ.

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ........................................................1

II.    DISCUSSION OF THE FACTS ....................................................3

    A.    The Second Amended Complaint .........................................3

    B.    The Third Amended Complaint and Undue Delay ..............................9

        1.    The April 2013 Discovery ......................................10

        2.    The July 2013 Discovery .......................................11

        3.    The October 23, 2013 Letter ...................................12

        4.    There Was No Undue Delay ....................................13

III.    LEGAL ARGUMENT ...............................................................15

    POINT I

    THE FAILURE TO PERFORM MINISTERIAL
    DUTIES IS THE ISSUE BEFORE THIS COURT
    ON THE NEGLIGENCE CLAIMS ...........................................15

IV.    CONCLUSION...........................................................................17

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**Cases**</u>:

<u>Colburn v. Upper Darby Twp.</u>,
    946 F.2d 1017 (3d Cir. 1991) ...........................................................................8

<u>**Statutes**</u>:

N.J.S.A. 59:6-5.................................................................................................15, 16

N.J.S.A. 59:6-6.................................................................................................15, 16

N.J.S.A. 59:3-1.......................................................................................................16

## I.    **PRELIMINARY STATEMENT**

Defendants-Appellees' ("Defendants")   opposition carefully avoids any discussion referring or relating to (1) their own misfeasance and obfuscation in producing discovery including their successful efforts to block discovery during the periods of time Plaintiff was attempting to amend the complaint, causing a 2.3 year delay in the proceedings and the inability of Plaintiff to identify the proper defendants, and   (2) the overwhelming evidence of a meritorious claim, a blameless litigant and an unfortunate but rectified clerical error in counsel's office. Defendants assiduously avoid  any discussion of the merits of the  proposed Third Amended Complaint alleging that Plaintiff was desperately calling out for psychiatric help and being denied that help by the newly identified defendants. Instead,  Defendants focus  on three (3) red herrings:  The July 2013 discovery which was known to plaintiff at the time the final motions to dismiss were pending but were not dispositive on the critical issues;  the October 23, 2013 letter apprising plaintiff  of the SID investigation  in response to a tangential inquiry on matters related to other suicides/inmate complaints; and the April 2013 cover letter, which failed to note the existence of two (2) discs of materials and used overlapping bates numbers to identify different documents.  The defense avoids any discussion of the June 18, 2013 and September 24, 2013 emails which establish that plaintiff counsel was unaware of the critical discovery, and  of  the

abject failure to respond to interrogatories in any meaningful way, which included hiding the fact that Dimler's unit was for suicide watch requiring either 15 minute interval watch or continuous watch, complaints brought to the District Court's attention on the motion to reconsider the dismissal of the Complaint [A687].

The defense further fails to present all the relevant allegations in the Second Amended Complaint ("SAC")[A415], instead presenting only those that support a negligence claim, as opposed to the reckless conduct sufficient to establish a plausible claim for relief on the constitutional claims.

Plaintiff counsel notified the Court at every opportunity during the litigation regarding the need to amend or apply for relief: (1) by cross-moving to amend and requesting discovery during the first two (2) filings of the motion to dismiss by Trenton Hospital and the State Defendants [A203, 290]; (2) within **one day** of receipt of discovery from defendant Kintock that a motion to amend was required [A403, 410-4]; (3) within **45 days** of the need to file a motion to file a late notice of claim upon receipt of discovery identifying a defendant as a public employee [A357]; and (4) within **one week** of notification that Plaintiff was missing the critical disc of discovery in time to present the newly discovered evidence on reconsideration [A719]. At no time did plaintiff sit on her rights and fail to pursue timely intervention, including appeals and motions for reconsideration. The defense cannot point to any real prejudice in allowing the amendment as the case

had not been substantively litigated.  Dismissal of the Complaint and the failure to permit amendment   under the circumstances of this matter was excessively harsh and an abuse of discretion.

## II.  DISCUSSION OF THE FACTS

There is no essential disagreement on the legal principles presented in this case and with the exception of  the Title 59 immunities there is no need to present further legal argument (See Point I, *infra*.).

### A. The Second Amended Complaint

The defense recitation of the allegations omits those relating to actual knowledge of vulnerability to suicide, supervision and violation of policy.   The defense focuses its attention solely on the allegations relating to the failure of Dimler to review records, arguing that such misfeasance constitutes negligence only (defense Brief, pp. 4-5, 16-18).   That failure would certainly go directly to ministerial failures in performance, as opposed to the immunities upon which the court based its determination that the negligence theory of liability could not be pursued.

Plaintiff pled facts in the alternative, i.e, that either Dimler didn't  review the intake and electronic chart as required or he did and didn't follow policy (SAC, ¶ 26, 27, 28, 54, 61, 62).

Plaintiff did not simply state that Dimler knew about a history of suicide attempts and psychiatric illness, Plaintiff set forth all the details of that knowledge including all references in the jail records to that history (SAC, ¶ 43-50).

Regarding Dimler, the  relevant allegations in the SAC were that:

1.    Dimler was an employee of the DOC engaged in the supervision  of inmates, acting in his personal  and individual capacities under color of law (SAC, ¶ 7);

2.    Mullin was an addict with a history of drug abuse and suicide attempts, and immediately prior to his transfer from his halfway house at Kintock on January 15, 2009 to South Woods State Prison and then C.R.A.F. was found positive for highly toxic and addictive drugs,  exhibited deterioration in mental and psychological status and  was emotionally labile with aggressive behavior (SAC, ¶ 14-17).

3.    Immediately prior to transfer to the DOC facilities, two (2) days before his death, Mullin had swallowed a handful of depression medication pills in front of a caseworker at Kintock, was found to be both in the possession of, under the influence of, and tested positive for cocaine and opiates on or about January 16, 2009 (SAC, ¶15, 16, 17, 18).

4.    At the time he entered the DOC system, Mullin was noted to be at high risk for alcohol and drugs which needed to be addressed, and was in need of

additional services under a Discharge and Continuity Care Plan from Kintock (SAC, ¶ 21, 22, 24).

5.    That the medical record on Mullin reflected numerous entries from 2005 until his death evidencing past suicide attempts, diagnosis as a suicide risk, his familial history of suicide, his history of mental illness including anxiety, depression and mood disorder, and his use of psychotropic medication for this psychiatric condition [SAC, ¶40].

6.    Dimler had actual knowledge of Mullin's known and documented history of suicide attempts and psychiatric disturbance, both from the transfer records at Kintock and the chart maintained by the jail at CRAF (SAC, ¶ 27,61, 62).  At ¶ 61: "Despite a known history of decedent's suicide attempts, anxiety, depression and psychiatric instability, as well as a recent history of addiction and drug use, defendant Officer Dimler on Jan 16 and Jan 17, 2009 failed to provide adequate protection and supervision to decedent in the hours leading up to decedent's suicide and failed to intervene to prevent the suicide.  At ¶62: "Plaintiff's decedent had a known  and documented history of suicide attempts and psychiatric disturbance dating from 2005, 2007, 2008 and 2009 up to and including his final evaluation prior to this death , which was known to, and should have been known to, …Officer Dimler…"

7.    Between January 15, 2009 and January 17, 2009 plaintiff's decedent was released to a single cell without adequate one on one and constant supervision and observation (SAC, ¶ 20).

8.    Dimler had actual knowledge that Mullin was an addict and required one on one constant supervision as he was at high risk for suicide and/or self-inflicted harm (SAC ¶27): "Officer Dimler knew or should have known of the history of suicide and psychiatric illness suffered by Mullin as herein described, know or should have known based on the transfer records from Kintock that Mullin was an addict and required one on one constant supervision as he was at high risk for suicide and/or self-inflicted harm.

9. Dimler knew that policy and procedure required direct and constant supervision and monitoring, and yet failed to abide by said policy and procedure, evidencing a gross indifference to the welfare of Mullin (SAC ¶28).

10.    On January 17, 2009, at approximately 4:23 am, defendant Dimler found plaintiff's decedent unresponsive after hanging himself with a self made noose made of a bedsheet (SAC, ¶25).

11.    Officer Dimler was the individual corrections officer or staff responsible for the care, treatment, supervision and monitoring of  Mullin at the time of death and throughout the course of Officer Dimlers's shift (SAC, ¶26).

6

12.    Officer Dimler permitted Mullin to be in a cell with materials, such as bedsheets, which are known to be used by inmates at risk to harm themselves, including the committing of suicide, in violation of procedure, policy and protocol (SAC, ¶ 29)[emphasis supplied].

13.    Officer Dimler failed to adequately evaluate, **supervise or monitor** plaintiff, which failures were the direct and proximate cause of the self-harm and suicide by Mullin (SAC, ¶ 55, 61)[emphasis supplied].

14.    Officer Dimler, among other defendants, permitted and allowed decedent "to be unsupervised, alone and with the wherewithal to do harm to himself, failed to provide medical and mental health attention, failed to provide adequate protection and supervision to decedent in the hours leading up to decedent's suicide and failed to intervene to prevent the suicide (SAC, ¶ 77). Further, defendant Dimler violated "policies, procedures and standards with respect to suicide watch and avoidance" and failed to intervene to stop the suicide which was foreseeable under the circumstances (SAC, ¶ 77).

15.    Officer Dimler was "under a duty to act reasonably in following and maintaining proper protocol, policy, procedures, rules and guidelines enacted and propounded with respect to [his] duties and the care and  management of plaintiff's decedent" (SAC, ¶ 107).

7

16.    Plaintiff specifically alleged in the SAC that Dimler "knew that policy and procedure required direct and constant supervision and monitoring, and yet failed to abide by said policy and procedures, evidencing a gross indifference to the decedent's welfare (SAC, ¶ 28).

17.    Plaintiff alleged that Dimler "failed to provide adequate protection and supervision to decedent in the hours leading up to decedent's suicide and failed to intervene to prevent the suicide  (SAC, ¶61).

The defense concedes in their brief that the  standard  under  Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) will be met where there is knowledge of a "history of suicide attempts" or "psychiatric diagnoses identifying suicidal propensities" (Defendant Brief, p. 15).  Such knowledge was clearly pled as well as the means by which such information would have been obtained by Officer Dimler.  It is not for the District Court to determine whether  the means  is appropriate or required by policy;  it is not for the District Court to determine  that the pleadings do not adequately allege actual knowledge because  the court doesn't like the way the knowledge was obtained.  There are many ways to obtain actual knowledge  of vulnerability to suicide and they do not require the inmate to personally request help and state that he's going to kill himself (which did occur). Plaintiff pled that Dimler was required by policy to review the records which put him on notice of the suicide risk; plaintiff pled that he did read the records or in the

alternative failed to read them.    These allegations in the SAC actually dovetail with the April 2013 Missing Disc discovery in that Mullin was classified through the electronic records as a Special Needs Inmate requiring constant observation. They were more completely pled in detail on the proposed Third Amended Complaint ("TAC")[A1225], which application to amend was denied.

Accordingly,  the Complaint should not have been dismissed to begin with, and the matter should  have proceeded to be substantively litigated.

## B.  The Third Amended Complaint and Undue Delay

Defendants do not argue the futility of the TAC; that pleading is before this Court documenting in detail that Dimler did not make his required rounds; that Mullin was housed in a unit requiring close or constant observation which did not occur and that Mullin was heard by 11 inmates as screaming for help and that he was going to commit suicide,  such pleas not only being denied and ignored by the newly identified defendants, but met with scorn, derision and  ridicule. [TAC, ¶ 1235-1238] .  Using November 1, 2013 as the operative date under both the Magistrate's and District Court's analysis involving  judicial resources, there was a four (4) month delay in notifying the Court of the problem with the Missing Disc (March 4 2014), which notification was in time to properly present  reconsideration and a motion to amend.  The defense uses a ten (10 month) timeline for delay based on the date the discovery was provided (April 2013 to March 4, 2014).

1.   <u>The April 2013 Discovery</u>

 Plaintiff  counsel  asked her office staff for the materials contained on the

one (1) known disc to be printed out and provided, and presumed the production

was complete.   The defense raises that Plaintiff should have observed the

differentials in the Bates numbers on the cover letter [see, A887].   A review of the

cover letter indicates that the documents are labeled  DOC Mullin  0001-0392, and

CM Mullin 0001 to 0305.   There were no comments about two (2) discs, or any

discs, being provided.   The July 17, 2013 cover letter also fails to note that there

were any discs included or the number of discs, but notes Bates numbers of  DOC

Mullin 0393-1138 and  CM Mullin 0306-0918 [A889].   Although it is easy in

hindsight to see the discrepancy based on "DOC" vs "CM,"  the numbering was

overlapping and at the time of review counsel  did not pick up that there was a

missing disc of documents.

 The defense uses the word "purportedly" in describing  Plaintiff's averments

as to how counsel came to learn of the Missing Disc, casting unwarranted and

unfair aspersion on counsel.   As an officer of the court counsel was and remains

compelled to be truthful.   It would have been easier to simply advise that the disc

of materials was never even received, which is what counsel initially thought until

a frantic search of  the files in the office revealed that the Missing Disc had been

misplaced and misfiled.   Further it is inaccurate to state that the first time the

information in the April 2013 discovery was presented was on plaintiff's motion to amend on August 22, 2014 (defense brief at p. 28).  This information was disclosed to the Court on March 4, 2014 and presented on reconsideration.

2.  <u>The July 2013 Discovery</u>

The defense cites the lower court's  comments that the July 2013 production might have changed the decision to dismiss the case.  That position lacks merit, as the July 2013 production failed to establish that Mullin was a Special Needs Inmate, failed to establish that Dimler did not in fact conduct his proper rounds, and failed to establish the connection between the classification as a Special Needs Inmate and any of the policies and procedures requiring constant or close watch/observation of Mullin.  Plaintiff had in fact pled those allegations in the SAC without needing the July 2013 discovery.   The July 2013 production failed to identify any of the defendants, in particular Officer Russo, who ignored Plaintiff's cries for help.  The July 2013 production failed to indicate that there were 11 inmates with direct knowledge of the incident and the cries for help.  The policies and procedures provided in the July 2013 discovery would not have changed or altered the November 1, 2013 decision as they did not connect Mullin and his classification and needs to the policies.

### 3. The October 23, 2013 Letter [A1219]

Nor would the October 23, 2013 correspondence changed the course of the November 1, 2013 decision as it was received by Plaintiff counsel on November 1, 2013.    The October 2013 correspondence was in response to Plaintiff's email of September 24, 2013 in which she listed 10 items of missing discovery.    Items 1, 2, 3, 8 and 9 referred directly to decedent.    Items 4,5, 6, 7 and 10 related to discovery requests for other suicides and other lawsuits and internal affairs files regarding other suicides [A710-711].    The defense included the SID bates numbers for item #6, which on the September 2013 email requested "Morbidity and Mortality reviews for all suicides/attempted suicides within 5 years prior and 1 year subsequent to plaintiff's suicide;"  and which on the October 2013 response was listed under "inmate or outside complaints, internal affairs investigations on suicides or self  harm."  The critical documents were not mentioned in items #1 and #2, specifically referencing the subject incident.  As discussed in her Brief in chief,  interest in the tangential discovery was less important and could await further review  as opposed to the evaluation of the November 1, 2013 Opinion dismissing the Complaint which required  immediate response.

Even if plaintiff  had ascertained the existence of the Missing Disc discovery from this correspondence earlier, the result would have been the same:  discussion of the evidence on the reconsideration motion, which in fact occurred.

Assuming the Court finds that plaintiff's inaction or failures did cause a ten (10) month delay, that must be compared to the period between January 2011 and April 2013,  a 2.3 year delay  during which no relevant discovery was offered, including the SID report which identified the proper defendants.   Would the defense have been able to raise their Relation Back argument in the event plaintiff sought to amend in April 2013?   Would they have been successful in advancing a theory that the new defendants did not have notice of the lawsuit within 120 days?   In determining whether there was an abuse of discretion in denying plaintiff the ability to file the TAC and in affirming that order,  these issues become prominent.

There is the delay caused by error and inadvertence as opposed to the delay caused by dilatory tactics in opposing discovery and  failing to produce critical evidence.    There is the delay immediately rectified as opposed to the delay that was purposeful and tactical.  This case is not about "clues."  It is about balancing the equities and the interests of justice.   It is about prejudice,  the key to a finding of undue delay warranting the sanctions levied by the Magistrate and the District Court.

4.    There was no Undue Delay

Plaintiff was not soley at fault for the "tortured" procedural history of the case.

13

In her Brief in chief, Plaintiff notes there were  seven (7) motions including appeals filed prior to the receipt of any discovery (Plaintiff Brief, p. 18).[1]  Actually there were eight (8)  motions, as follows:

1.  State  motion to dismiss [A197].

2.  Trenton Psychiatric motion to dismiss [199].

3.  Plaintiff motion to amend and compel discovery against the State [A203].

4.  Plaintiff motion  to amend and for discovery against Trenton [A256].

5.  Plaintiff reconsideration motion  [A327].

6.  Plaintiff motion appealing denial of amendment adding Dimler and discovery on reconsideration and to amend the Complaint based on July 2, 2012 discovery by Kintock [A403].

7.  Plaintiff refiling notice of appeal [A457].

8.  Plaintiff refiling motion to amend  [A467].

9.  State defendants' refiling motion to dismiss [A518].

10.  Defendant Jane Byrd filing motion to dismiss [A524].

Plaintiff's efforts to compel discovery to assist on amending the complaint were denied  [A296].

---

[1] Not including the motion to file a late notice of claim which does not bear on the argument [A373].

Defendants' arguments regarding prejudice lack merit.  They are well able to litigate the matter.  There was no trial date  and  little substantive discovery, with notice to all of the claims and theories of liability.

## LEGAL ARGUMENT

### POINT I

### THE FAILURE TO PERFORM MINISTERIAL DUTIES IS THE ISSUE BEFORE THIS COURT ON THE NEGLIGENCE CLAIMS

The defense continues to assert that immunity under Title 59 applies by reason of N.J.S.A. 59:6-5 and 59:6-6. (defense Brief pp. 18-20). Plaintiff does not argue on this appeal that these immunities would not be applicable in a proper context.  Plaintiff's argument is that the District Court failed to distinguish between claims that would be covered under these immunities and claims based on simple failure to perform known ministerial duties, such as following a policy requiring one-on-one observation or monitoring.   Several failures in ministerial duties were pled in the SAC and then fleshed out in even more detail in the TAC:  the failure to review transfer records which were required to be reviewed; the failure to follow policy with respect to close or constant monitoring;  permitting and allowing bedsheets in the cell in violation of policy and  the failure to provide the mental health treatment required by policy among other derelictions.   None of these failures have anything to do with  "diagnosing or failing to diagnose …mental

15

illness…" N.J.S.A. 59:6-5, or  "determining…(1) whether to confine a person for mental illness…(2) the terms and conditions of confinement for mental illness or drug dependence…," N.J.S.A. 6-6.    Dimler was required <u>by policy</u> to provide constant or close monitoring and did not.   Dimler had to <u>follow express policies</u> upon notice of Mullin as a Special Needs Inmate or an inmate vulnerable to suicide and did not.    A regular negligence standard applies to the failure to do these acts; they do not involve an evaluative process.    N.J.S.A. 59:3-1.    Accordingly, the SAC should not have been dismissed and/or the TAC should have been permitted to be filed and the matter proceed.

## IV.   __CONCLUSION__

The error in misplacing a disc of discovery materials  and failing in good faith to appreciate the error and bringing the problem before the Court within a week of notification does not justify dismissal or denial of motion to amend.

There is no  undue delay as interpreted by the Third Circuit to mean truly dilatory and prejudicial conduct.   The dismissal of the SAC and/or the denial of the amendment to permit filing of the TAC should be reversed and the matter remanded to the District Court for further proceedings.

Respectfully submitted,


/s/ Shelley L. Stangler
Shelley L. Stangler, Esq.
Shelley L. Stangler, P.C.
Bar ID 023191987
Attorney for the Appellant/Plaintiff
Joan Mullin as Administratrix of the Estate
of Robert Mullin, Jr. and Joan Mullin
Individually

Dated:  April 19, 2017

17

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND LOCAL RULE 31.1

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the Court's Order, Filed January 10, 2017 Granting Appellant's Motion to file a reply brief not exceeding 6,500 words because this brief contains 3,606 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2008 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated:       April 20, 2017

/s/ Shelley L. Stangler, Esq.
Shelley L. Stangler, Esq.

## CERTIFICATE OF FILING AND SERVICE

I, Robyn Cocho, hereby certify pursuant to Fed. R. App. P. 25(d) that, on April 21,

2017 the foregoing Reply Brief on Behalf of Appellant Joan Mullin was filed

through the CM/ECF system and served electronically on parties in the case.

/s/ Robyn Cocho
Robyn Cocho