*The Law Offices Of*
# SHELLEY L. STANGLER, P.C.

A PROFESSIONAL CORPORATION

SHELLEY L. STANGLER
MEMBER N.J. & N.Y. BAR

JUDITH L. ROSENTHAL
OF COUNSEL
MEMBER N.J. BAR

155 MORRIS AVENUE
SPRINGFIELD, NJ 07081
TEL: 973.379.2500
FAX: 973.379.0031
E-MAIL: SHELLEY@STANGLERLAW.COM
WWW.STANGLERLAW.COM

NEW YORK OFFICE
800 6TH AVENUE
STE. 5B
NEW YORK, NY 10001
TEL: 646.205.0659

May 16, 2017

VIA ELECTRONIC FILING
The Third Circuit Court of Appeals
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

           **Re: Joan Mullin v. Karen Balicki, et al**
           **Case No: 16-2896**

Dear Clerk:

      Plaintiff-Appellant Mullin submits this letter in response to the request by the Court for a discussion regarding the impact of the recent decision in Palakovic v Wetzel, 2017 WL 1360772, __F.3d __ on the pending appeal. In Palakovic this Court reversed dismissal of the action on the pleadings.

      Palakovic reviews the pleading standards relating to a jail suicide case. The case does not address Title 59 immunities or undue delay and prejudice which precluded the filing of the Third Amended Complaint ("TAC") or relation back as to the newly identified defendants. The case evaluates the standards for claims involving conditions of confinement and allegations regarding systemic failures in the handling of mentally ill inmates, which have not been alleged in Mullin. This Court did address, however, the standards applicable to jail suicide cases involving the "vulnerability to suicide" standard under Colburn v. Upper Darby Twp. (Colburn I), 838 F.2d 663 (3d Cir. 1988), Colburn v. Upper Darby Twp. (Colburn II), 946 F.2d. 1017 (3d Cir. 1991), and Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005). In applying the Palokovic rulings and standards to the Mullin case, this Court remains concerned about the ability to pursue a matter on the merits.

## The Standards regarding a Jail Suicide Case

In <u>Palakovic</u> the Court reiterated that the pleading standards require a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the....claim is..." citing <u>Bell Atl. Corp. v. Twombly</u> 550 U.S. 544, 555 (2007) quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). The facts as pled must contain a plausible claim for relief and the facts must be accepted as true. There is a difference between facts and conclusions. <u>Palakovic</u>, at *5.

The Court emphasized that there is no heightened pleading requirement in a jail suicide case and the District Court is not to engraft one. Plaintiff does not have to plead facts to show that the "plaintiff's suicide was temporally imminent or somehow clinically inevitable." *Id.* at *14.

The Court defined the term "particular vulnerability to suicide." This requires that the (1) the degree of risk be a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." It should be apparent to a lay person that preventative action is necessary. <u>Palakovic</u>, at *7, citing <u>Colburn II</u>, 946 F.2d at 1025 (citations omitted).; (2) the level of culpability is deliberate indifference or recklessness, which means that the culpability is "something beyond mere negligence." <u>Palakovic</u> at *7 and (3), there must be notice, meaning knowledge sufficient to impose liability which can be acquired through several means, including knowledge of a history of suicide attempts or a psychiatric diagnosis identifying suicidal propensities. *Id.* at *7,8, citing <u>Colburn II</u>, 946 F.2d. at 1025 n.1.

Of interest is the Court's determination that a claim of inadequate mental healthcare treatment is not synoymous with the "vulnerability" claim in failing to prevent a jail suicide and can be presented as a separate and distinct cause of action <u>Palakovic</u>, *Id.* at *11. This claim involves a determination of whether the care itself fails to satisfy constitutional requirements, leading to the suicide. Where the prison officials deny reasonable requests for medical treatment and/or intentionally refuse requests to provide that care the deliberate indifference standard under the Eighth Amendment at least at the pleading stage is met. *Id.* at *11-12 (citations omitted). In addition to pleading that Mullin was vulnerable to suicide, Plaintiff also pled that the Defendants, including Dimler, failed to provide adequate medical care and treatment of constitutional dimension [SAC, ¶75,77,81].

**Factual Comparison & the Pleadings**

The <u>Palakovic</u> plaintiffs pled the following facts pertinent to the subject matter:

1. That plaintiff's decedent ("Brandon") had advised the mental health staff that he had attempted suicide in the past and had recently engaged in self-harm;
2. Brandon advised the staff that he experienced periodic thoughts of self-harm and suicide;
3. Brandon was diagnosed with a number of serious mental disorders, including alcohol dependence, anti-social personality disorder and impulse control disorders;
4. Brandon was classified with a rating signifying "a substantial disturbance of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality or cope with the ordinary demands of life";
5. That Brandon was placed on the prison mental health roster and, that
6. Brandon reported feeling depressed, had symptoms of depression, acknowledged suicidal thoughts and a wish to die, with a nickname "Suicide." *Id.* at *1, 14.

In response to these facts, the Court noted that;

1. Allegations that the prison diagnosed Brandon with an array of serious mental health issues and placed him on a mental health roster was a sufficient basis to infer that prison officials had or should have had knowledge of these diagnoses *Id.* at *11;
2. The allegations were sufficient to proceed to discovery on the claim regarding failure to provide mental health treatment *Id.* at *13;
3. The allegations so clearly contemplated a "strong likelihood" of self-harm that if Brandon could not meet it "it [would be] difficult to imagine how any plaintiff could ever succeed in doing so." *Id.* at *14.

Most significantly, the Court rejected a reading of the Complaint as subjecting plaintiff to dismissal where the pleading "only generally allege[d] that Defendants 'were aware of' or 'were familiar with' [Brandon]'s medical history, vulnerability to suicide and his nickname of 'Suicide.'" *Id.* at *14.

Pleading that the prison officials knew or should have known of a particular vulnerability to suicide **from a history of suicide attempts or a diagnosis**

3

**identifying suicidal propensities meets the standard** [emphasis supplied]. *Id.* at *14.

The factual allegations presented a plausible claim for relief where the prison officials knew that Brandon had attempted suicide on prior occasions; that he was identified as a suicide risk, put on a mental health roster and diagnosed with multiple serious mental illnesses. In particular, the allegations that all of this information was set forth in **Brandon's records, which the officers either reviewed or should have reviewed -** were sufficient to support a reasonable inference that prison officials knew or should have known of Brandon's particular vulnerability to suicide *Id.* at *14. **Further, that the dispositive issue was not what the officers were actually aware of but what they should have been aware of** [emphasis supplied]. This Court rejected the analysis that the pleadings could only stand muster if the factual allegations showed that (1) a defendant took affirmative action directly leading to the suicide; (2) a defendant actually knew of the suicidal tendencies and ignored taking precautions, or (3) a defendant failed to take necessary and available precautions to protect the inmate. *Id.* at *15, citing the District Court's reliance on Freedman v. City of Allentown, 853 F.2d 1111, 1115-16 (3d Cir. 1988), a case upon which the District Judge and Magistrate relied upon in the Mullin case.

This Court also found that supervisory liability attaches where the supervisor is aware of polices or practices and disregards them, citing Beers-Capitol, 256 F.3d at 155. *Id.* *16.

In Mullin, plaintiff pled in the SAC that the medical record available to defendant Officer Dimler reflected past suicide attempts, history of psychiatric disturbance dating from 2005 up to and including his final evaluation prior to death, diagnosis as a suicide risk, a family history of suicide, a history of mental illness including anxiety, depression and mood disorder including the use of psychiatric medications prescribed during prior periods of incarceration; that immediately before being transferred back to the jail Plaintiff tested positive for highly toxic and addictive drugs; that the day before the suicide his prison chart stated that he had a history of being a suicide risk and suffered from a mood disorder; that Dimler had actual knowledge of these events from the transfer records provided from Mullin's half-way house and the chart maintained by the jail; that Dimler failed to follow policy requiring one on one and constant supervision; that Dimler know of the history of suicide based on the records as well as policy; and his failure to intervene, monitor, supervise and abide by specific policy was a direct and proximate cause of Plaintiff's death by suicide [A415, SAC ¶14-17, 21-24, 26-29, 36, 40-41, 43-50, 54-55, 61, 62]. Plaintiff

contends that the application of the standards set forth in Palakovic would indicate that dismissal of the SAC was in error and should be reversed.

The TAC [A1173] expanded all the prior allegations to include that Mullin had been placed on a Special Needs Roster, having been designated as an inmate suffering from a psychiatric condition who is "unable to meet the functional requirements of incarceration without mental health treatment;" that the Roster was available to all corrections officers and supervisors; that Mullin had been transferred to a Close Custody Unit requiring either 15 minute Close Watch monitoring or Constant Observation; that Mullin was required to be placed on Constant Observation status under applicable policy; and that he was not monitored in accordance with that policy [TAC, ¶30, 31, 35, 41-44, 45, 49]. Further, that Dimler, along with the newly identified defendants, Officers Russo and Large and Shift Commanders Yansek, Dudich, Stern and Spence all had responsibility over Mullin during shifts 2 and 3, the period of time when Mullin desperately requested psychiatric services and said he was going to commit suicide to Officer Russo, who purposefully ignored him and told him "go ahead and hang [yourself]," and during the period of time requiring Constant Observation, which did not occur under the Supervisor's and Officer's watches [TAC, ¶30, 35, 40-45, 49, 53-77].

There is no question that under Palakovic these allegations set forth a plausible claim for relief against all of these defendants. Further, Yansek, Dudich, Stern and Spence were obligated by policy to know which inmates under their watch were designated Special Needs, and had direct knowledge that Mullin was a special needs inmate requiring special precautions and monitoring. [TAC, ¶66, 67, 72-77].

The Palakovic opinion establishes that the District Court should not have read the SAC as narrowly as she did; that the SAC should have been permitted to stand both under the "vulnerability" standard under the Eighth Amendment or for the failure to provide medical treatment; and further that it was an abuse of discretion under all of the circumstances to deny permission to file the TAC where there was no prejudice and the factual allegations, if proven, establish clear liability.

Respectfully submitted,

*/s/ Shelley L. Stangler*

cc:  Gregory Buono, Esq.                         Shelley L. Stangler, Esq.