CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
*Attorney for Defendant-Appellee Nicholas Dimler*

By:   Gregory R. Bueno
      Deputy Attorney General
      (609) 633-8687
      gregory.bueno@dol.lps.state.nj.us

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| JOAN MULLIN, et al., : <br><br>             Appellant, <br>       v. <br><br>ADMINISTRATOR KAREN BALICKI <br>et al., <br><br>             Appellees. | **SUPPLEMENTAL SUBMISSION IN RESPONSE TO THE COURT'S MAY 9, 2017 ORDER TO THE PARTIES** <br><br>Docket No.: 16-2896 <br><br>Sat Below: Hon. Mary L. Cooper, U.S.D.J. |

Please accept this submission on behalf of Defendant-Appellee Officer Nicholas Dimler in response to the Court's May 9, 2017 Order instructing the parties to address the effect of this Circuit's recent decision in Palakovic v. Wetzel, 2017 U.S. App. LEXIS 6438 (3d Cir. April 14, 2017) on the instant appeal.  Defendant respectfully submits that the Palakovic decision does not control the outcome of the present appeal, as the matters are factually and legally distinguishable. Any relevance the opinion has to this case is limited to the holding regarding vulnerability to suicide claims, which further militates in favor of dismissal.

1

The decedent in Palakovic committed suicide while incarcerated at the State Correctional Institution in Cresson, Pennsylvania ("SCI Cresson") following repeated periods of solitary confinement. Id. at *4-*8. Following his conviction and incarceration, Palakovic informed mental health staff at SCI Camp Hill that he had attempted suicide in the past, engaged in self-harm less than a year ago, had periodic thoughts of self-harm, and made plans about how to kill himself. He was diagnosed with a number of mental disorders and was identified as a "suicide behavior risk." Id. at *2-*3. After being transferred to SCI Cresson, Palakovic reported feeling depressed, exhibited signs of depression, and acknowledged suicidal thoughts, but was never given a suicide risk assessment. Id. at *3-*4. Palakovic was repeatedly placed in solitary confinement in the prison's Restricted Housing Unit ("RHU"), where he was confined to his cell for 23-24 hours a day and received no psychological counseling or therapy. Id. at *4.

Following his suicide, Palakovic's parents (the administrators) filed a complaint alleging claims under the Eighth Amendment that the defendants had been deliberately indifferent to the inhumane conditions Palakovic experienced and to Palakovic's serious need for mental healthcare and, later, an amended complaint alleging vulnerability to suicide claims and an Eighth Amendment claim against the supervisory officials for failure to train.

On appeal from the District Court's dismissal of the claims, the Third Circuit reversed and vacated the dismissal. Id. at 1.  In considering Palakovic's Eighth Amendment claims, this Court evaluated whether the claims should be subject to the "vulnerability to suicide" framework set forth in Colburn v. Upper Darby Twp. ("Colburn II"), 946 F.2d 1017 (3d Cir. 1991).  This Court found that the District Court misconstrued the holding in Colburn II and clarified that the vulnerability to suicide framework established therein applies when a plaintiff seeks to hold prison officials accountable for failing to prevent suicide, but does not preclude other types of

claims – including Eighth Amendment conditions of confinement claims. See Pakalovic, supra, 2017 U.S. App. LEXIS 6438 at *21-*22. As to the appropriate standard for a vulnerability to suicide claim, the Court reiterated that a plaintiff must demonstrate a "strong likelihood" of self-harm based on the "totality of the facts presented." Id. at *34-*35.

Contrary to the Palakovic case, Mullin has not alleged Eighth Amendment conditions of confinement or deliberate indifference claims. (A24-A38; A430-A446). Moreover, Palakovic does not involve the procedural question of when to permit further amendments to a complaint. Here, one of the bases for dismissal was Mullin's failure to timely amend her complaint. (A57-A79). Therefore, any relevance of the Palakovic opinion would be limited to the Court's discussion of the standards for the "vulnerability to suicide" framework. Notably, the Palakovic opinion does not alter the standards for asserting a prima facie constitutional claim against corrections officials for failing to prevent an inmate suicide set forth in Colburn II and Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005). Indeed, Palakovic does not mark a material departure in this Circuit's jurisprudence in this area of law. Thus, the more appropriate inquiry is the extent to which the Court's application of the Colburn II factors in the Palakovic case impact the instant matter.

In reversing the District Court's dismissal of the vulnerability to suicide claims in Palakovic, the Court reaffirmed that a plaintiff must establish: (1) the detainee had a particular vulnerability to suicide, (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers acted with reckless indifference to the detainee's particular vulnerability. Coburn II, supra, 946 F.2d 1017, 1023 (3d Cir. 1991). While the Court clarified that a plaintiff need not establish that suicide was "temporally imminent or somehow clinically

3

inevitable," it found that an individual's vulnerability to suicide must be assessed based on the totality of the facts presented. Palakovic, supra, 2017 U.S. App. LEXIS 6438 at *34-*35.

    The facts pleaded in Palakovic were found to be more than sufficient to establish a strong likelihood that self-inflicted harm would occur. Palakovic, despite having informed mental health staff of his history of suicidal ideation and self-harm and receiving a low-stability classification before arriving at SCI Cresson, had experienced multiple periods of solitary confinement and was placed in the RHU when he committed suicide. Id. at *3-*5. Palakovic was isolated from the rest of the prison population and did not receive mental health care. Id. at *4. Further, although the administrators concede that SCI Cresson provided Palakovic with antidepressant medication, they allege that distribution of the medication was poorly monitored, and he never received subsequent attention from mental health staff to determine whether the medication was effective. Id. at *30-*31. Moreover, so well-known was Palakovic's propensity toward depressive behavior that his nickname in prison was "Suicide." Id. at *3.

    Here, the decedent had returned to prison for abusing illegal drugs and alcohol while in a halfway house and committed suicide while in New Jersey Department of Corrections custody. (A419-A429). Mullin made no claims alleging that her son's mental health was in such a precarious state that Defendant knew or should have known that that he had a vulnerability. (Id.). While decedent had a mental health history and had recently used intoxicants, Plaintiff did not plead sufficient factual information to show that he had a strong likelihood of engaging in self-harm. (Id.). Merely having a history of mental health issues and recent intoxication cannot reasonably be construed as constituting a strong likelihood of self-harm. Plaintiff did not take any action, nor did any other event occur, which alerted (or should have alerted) Defendant that he was a suicide risk. (Id.). Moreover, unlike in Palakovic, Plaintiff was not kept in solitary

confinement, but was cleared for placement in general population. (A426). Indeed, the kinds of egregious allegations made against the correctional defendants in Palakovic are conspicuously absent here. Additionally, while Mullin's allegation that Defendant failed to review the decedent's transfer records or evaluate him for intoxication may, if true, constitute negligence, it does not establish a reckless indifference to his vulnerability to suicide. Thus, based on the totality of the facts presented, it was entirely reasonable for the District Court to find that Mullin failed to establish a strong likelihood that her son would commit suicide.

For these reasons, Defendant submits that, although the two cases deal with similarly tragic events, the Palakovic opinion has little to no impact on the resolution of this appeal. To the extent it has any impact, it further supports the position that the District Court's dismissal of this action should be affirmed.

                Respectfully submitted,

                CHRISTOPHER S. PORRINO
                ATTORNEY GENERAL OF NEW JERSEY

By:   _s/ Gregory R. Bueno_____
        Gregory R. Bueno
        Deputy Attorney General

Dated: May 18, 2017